Hear ye, hear ye, hear ye. The United States Code of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Morning, gentlemen. We appreciate your attempting to participate in this unusual type of hearing. We regret very much that we can't be in New Orleans and hope that this will all end soon and we'll get back to normal operating procedures. It's been particularly hard on our courtroom deputies in our clerk's office, I will add, and their heroes under the circumstances. We will have a couple of extra procedures going forward because of this remote hearing, but one thing does not change. We do not allow video or photos or recordings of the proceedings just as if we were in New Orleans. We'd ask you both to make sure your telephones are muted so that we don't get interruptions and we will give each of you five minutes extra, not extra, five minutes uninterrupted at the beginning of your presentation in order to try to avert confusion. That said, I will call, and as always, of course, we like record citations. Call the first case, number 19-40554, United States versus Aguilar. Hear from Mr. Lynch. How are you doing, Mr. Lynch? I'm doing fine, Judge. Thank you. Hopefully, this will go fine. May it please the court, Phil Lynch for Alfredo Aguilar. The question in this case is whether border agents are permitted to conduct a warrantless forensic search of a cell at an international port of entry. The answer is no. Such a search is not permitted by the Fourth Amendment. The Supreme Court has made clear to us that cell phones have a great degree of Fourth Amendment protection because of the huge amount and wide variety of information that can be accessed through them. In Riley, the court considered whether the search incident to arrest exception allowed a cell phone to be searched. It concluded that it did not. In so doing, the court told us three things that are important about cell phones and that are critical to this case. The first is that cell phones are not containers. The second is that searches of cell phones are quantitatively different than other searches because of the The third thing is that searches are qualitatively different because of the types and varieties of records that may be accessed through a cell phone. The amount of records the court pointed out is greater than one might hold in one's entire house. Although Riley was considering the specific question of whether a search incident to arrest allowed a search of a cell phone, it provided us with useful guidance. The first and perhaps biggest thing is that it said our holding is not that cell phones are immune from search. It's that generally a warrant is required. The court provided us with guidance as to how to consider cell phone searches in the context of warrant exceptions, which such as search incidents or border searches. What the court told us was that we have to look to three concerns. The first is the amount of the intrusion. The second is the government interest. And the third is a jurisprudential concern to not untether an exception from its justification. When we consider those factors, I think it tells us that a forensic, warrantless forensic search of a cell phone is not allowed by the Fourth Amendment. Riley Court made it very clear, not simply in the context of search incidents, but spent a lot of time comparing cell phone searches to other searches. The court said this comparing a search of a cell phone to an ordinary container was like comparing a horseback ride to a flight to the moon. The degree of intrusion that a cell phone search involves is tremendous. And the Supreme Court has told us that in Riley and reinforced it in Carpenter when they required a warrant for cell phone records. Carpenter is less directly relevant, but it reinforces the idea that cell phone searches are extremely intrusive. The government interest and the border exception has always been interdiction of contraband. Interdiction of contraband is not the same as the kind of general rummaging search that the Supreme Court recognized a search of a cell phone is. A search of a cell phone, that qualitative difference, maybe more than anything, is what makes the border exception not relevant. This is as if border agents are allowed to search through your entire home, your bank records, even into information that may never have entered the United States that you may access from your phone from a different country. So the degree of intrusion is great. The interests are not the same. It's not a matter of finding contraband. Therefore, the border exception cannot be used to justify a warrantless forensic search of a cell phone. The U.S. Circuit recognized this in its opinion in United States versus Kano, which is 934 Fed Third 1002. In Kano, the court held that forensic searches of a cell phone require reasonable suspicion and that cell phone searches at the border must be limited in scope to search for digital contraband. Now, at first glance, the use of reasonable suspicion suggests that a warrant is not required. But in fact, read together, those two holdings, reasonable suspicion and reasonable suspicion of digital contraband, tell us that in the normal case, the usual case, a warrant is required to conduct a cell phone search. It is only in the exceptional case. And that, too, is entirely consistent with what Riley told us. Because Riley told us, the chief justice reminded us in rejecting the government's arguments that case specific exceptions may still justify a warrantless search of a particular cell phone. And so in fashioning the test that it did, using the Riley factors, Kano recognized that. Now, Mr. Aguilar's case does not require, does not contain any evidence of, or nor do I believe the government has made a claim that the agents suspected the phone contained digital contraband. I'm finding the question, Sharon, I don't need the whole five minutes. All right. Wasn't that Kano case, in fact, based on, it was digital contraband under the fact, it wasn't, didn't have language limiting border searches to digital contra, what some call digital contraband, did it? I think it did, Your Honor. Their holding seems fairly clear to me that Judge Bybee is saying that it's only when the agents reasonably suspect the phone contains digital contraband that they can search it. Oh, well, then you're talking about Kotterman, not Kano. No, Kotterman, they relied on Kotterman, but this is the Kano holding, Your Honor. I do believe that the court said specifically that only when they reasonably suspected that a particular phone contained digital contraband, could they conduct a warrantless forensic search. And so the two rules they read together tell us that a warrant is required in the usual situation. Well, let me ask about the appealability issue that the court asked you both to brief. Yes, ma'am. Why was it that, were you the trial counsel? I was not trial counsel, Your Honor. Yeah. Well, why did trial counsel go for stipulated facts rather than a conditional guilty plea? Well, a conditional guilty plea is never within the control of the defendant. The government has to consent and the court has to consent. I, there's nothing in the record that tells us what happened in this case. I don't know if the defense attorney requested one. I don't know if he requested one and it was turned down, but a defendant on his own cannot appeal a denial of a motion to suppress if he pleads guilty and has not explicitly reserved it in writing. And in your, your letter, uh, brief in response, you made, you said two things. Number one, uh, that the cell phone information, although not part of the, um, stipulated facts here was somehow important to the determination of guilt, such that it, the fact that, such that it wouldn't be harmless error. And number two, you relied on the Nehara case for, uh, uh, some kind of principle of no waiver. Can you explain those? Yeah, sure, Your Honor. Um, and I would point out that the, the government has, my friend has, uh, said that the government is not contesting that the parties did intend that this would be appealable. Uh, Judge Garcia-Marmalejo told Mr. Aguilar specifically, I think it's, you'll find it at record, uh, 314 to 16 and then 321 to 22, that the procedure that they were using was, uh, intended and would allow him to appeal the denial, her denial of the motion to suppress. On the harmlessness part, uh, it probably would have been the better practice for a trial counsel to have, uh, asked that that be included as part of the stipulation. It was not included, but as I point out in my letter, the denial of a motion to suppress affects a defendant's rights because it has an effect on all of the decisions he has to make. And that's particularly true if he can't get a conditional guilty plea. Um, he may have wanted to go to trial. These facts were not a concession of guilt. They were here are some facts, Your Honor, and then the judge found that they would be sufficient. Uh, this is not a case like Willingham, which the government cites in which the evidence was overwhelming. They not only had the physical evidence from the pawn shop in that case, but they had a confession by Mr. Willingham after he had been advised of his Miranda rights. Um, what happens here is you're faced with the choice of if these records can come in, it affects my decision to go to trial. It affects my trial tactics. Had the motion to suppress been granted, the defendant and his counsel would have been in a different position and might very well have made a different decision about the jury trial. Well, that's just speculative, though, isn't it? I mean, it looked like a pretty open and shut case to me based on the fact that these three people were traveling in a group and that the two ladies, I believe, clearly implicated Aguilar as being part of their group. They were would have been subject to impeachment at a trial, Your Honor, because their stories over the course of the night they told each told about three different stories. They weren't wildly different, but they did differ in detail and they would have provided a substantial amount of impeachment information for Mr. Aguilar to use a trial. But with the concern that the government would use the phone records, which showed that he had been in Mexico and that he had made calls in Mexico, which I think is much more incriminatory and certainly is corroborative of the government's theory that the women's statement should be believed. And so the the existence of the phone records to be used at trial was had a harmful effect on his decisions. It prejudiced his chances at trial. And if if, as in the usual case, the court were to send this matter back, we would be in a pretrial position and he would have a chance to either go to trial or he'd have better negotiating leverage because the government would feel perhaps less confident in its case because of its witnesses. All right. And then the other question I have is, well, if if you admit the existence of harmless error in principle, but you don't say it's applied here, if we go back to the merits, are you seriously contending that this should be the first border search case in history where a warrant is required? Or are you arguing for some kind of reasonable suspicion? Well, again, Your Honor, I think if you look at Kano, that Kano, in effect, requires a warrant because it cards out a specific subset of cases in which forensic searches of cell phones are permitted. And that's if you say in effect, it requires a warrant. But I don't read Kano that way. Where do you find that? Well, I think it's you read their two holdings together, Judge Willett. The first holding is that that a forensic search of a cell phone at the border is not permitted. However, they hold that a forensic search is permissible, is not generally permitted, but is permissible if the agents reasonably suspect that the phone contains digital contraband. So reading those two together, if there's no evidence, and in this case, there isn't evidence that anyone suspected digital contraband, then we go back to the general rule, which for cell phones, as Riley tells us, is that a warrant is required. So you have to read the two together in Kano, but I believe when you read those two holdings together, what they're saying is in the usual case, we would expect agents to apply for a warrant. If the agents come in and testify to facts that led them to reasonably suspect that the phone contained digital contraband, then that reasonable suspicion, if the court finds those facts should be credited, is enough to justify a warrantless search. But if that's the rule, the general rule must be that a warrant is required. So in answer to Judge Jones's question, yes, our position is that a warrant would be required. If the court in providing guidance to the officers would, it may want to address the Kano issue and set a rule like Kano, but under that rule, Mr. Aguilar would still win because there's no evidence in this case that the agents reasonably suspected digital contraband. You can't doubt that the government has an enhanced interest in protecting the integrity of the border. I mean, the Kano court recognized that. Absolutely. I do not disagree with that, Your Honor. You don't dispute that individuals have a much more sharply decreased expectation of privacy at the border, correct? That's the general rule. I think that general rule has to be evaluated in light of the very strong statements that the Supreme Court has given us in Riley about the great degree of protection. But even Riley left open the possibility that, as the court said, other case-specific exceptions may still justify a warrantless search of a particular phone. Even Riley left that open. Your Honor, I would say that a case-specific exception, and then they were on to talk about exigent circumstances, is different than a categorical exception such as searches of smartphones or computers. Since Riley, can you point us to a case where a court has held that a warrant is required? I don't mean Kano that way. That's not my takeaway from Kano. May I answer that, Your Honor? Please. Again, rather than belabor my point, I would ask you to go back, look at those two holdings in Kano, and think about what they must say. Did they specifically hold that a warrant is required? No. But what they did hold was that a warrantless forensic search is not permitted. And that warrantless forensic search is what occurred in this case. And that's the only question the court has to reach if the court decides that a test, a reasonable suspicion test like Kano should apply, Mr. Aguilar would still prevail. Well, I'll leave you with this, which is footnote 15 from Kano. I call it Kano because there's no accent. But anyway, it says manual searches of cell phones at the border are reasonable without individualized suspicion, whereas forensic examination of a cell phone requires a showing of reasonable suspicion. My personal view is that you get to your warrant idea only by making the novel holding, the equally novel holding, that border searches are limited to contraband. And that's what you also need to depend on rebuttal. And we'll move over to Mr. Gagliardi. Thank you. Thank you. May it please the court. Seth Gagliardi for the United States. Your honors, this court should affirm the conviction and sentence and the denial of the motion to express for three reasons. First, even assuming the denial on the motion to express was error, it was harmless error in this case. Second, the agents involved in the forensic search of the cell phone SIM card had the objectively reasonable belief that a search warrant was not required for that search. And third, the Fourth Amendment under the border search exception does not require a search warrant to conduct the forensic search of a cell phone. As my first point, your honor, which we briefed in our supplemental letter brief, the holding in Worthingham makes clear and is analogous to this is suppressed. That is harmless error. In those cases, after a stipulated bench trial, if during a stipulated bench trial, there are sufficient facts stipulated to or found which proved beyond a reasonable doubt to a reasonable trier of fact that the defendant is guilty. That is very much the case here. As Willingham talked about in the suppression of the shotgun, in that case, it was cumulative. While there was merit to the motion to express, it was a red herring or a smokescreen, and the trial at USA fell for that. The Willingham decision that said specifically that fortunately on appellate brief, the appellate USA had briefed the harmless error analysis. I failed to do that in this case, and it's something I should have done in this case, because in fact, it is harmless error. That evidence that was suppressed from the forensic search of the cell phone SIM card amounted to a call log, something that could have been obtained from an unlocked cell phone merely by a manual search. It was six phone calls placed on an unknown date and time to numbers in Mexico. The only additional information that was recovered was that that cell phone was obtained or purchased in Mexico. That evidence was not submitted during the stipulated bench trial. It was not stipulated to. It had nothing to do with the stipulated facts that led the judge to find beyond a reasonable doubt that Mr. Aguilar was guilty in this case. The only time that evidence was used was during the sentencing hearing to argue that Mr. Aguilar had an aggravating role in this case as a supervisor or leader of Ms. Cano and Ms. Hernandez. Even if the evidence had been suppressed by the trial court, it would have still been available for use during the sentencing hearing. Mr. Aguilar, I want to just clarify something to your 28-J. We've still got a minute or two. Oh, I'm so sorry. Go right ahead, Mr. Aguilar. That's all right, Judge Willard. I can go ahead and answer your question. No, no, no. I'll wait. I'll wait. Go ahead. As to our second point, that the agents operated with an objective good faith belief that a search warrant was not required, that has been established by Melina Isidoro and there was no binding circuit present that has intervened since that decision to indicate to the agents involved that any elevated level of scrutiny would have been required or suspicion would have been required to conduct that search. Our third argument, of course, we can go into further, but I'm prepared for questions at this time, Judge Willard. Thank you for that. You started off with saying even if there was error, it was harmless, but I want to make sure that I understand kind of the sequence of the government's arguments because in your 28-J letter, you talked about that the harmless error argument was an in the alternative argument, that it was the government's that because Mr. Aguilar here kind of reserved his right to appeal when he stipulated to the facts necessary for his conviction, that the harmlessness and the waiver rules don't apply. So you're arguing harmless error in the alternative, correct? You don't believe that the court should necessarily pivot on harmless error. I don't believe the court has to pivot on harmless error. I think the government is on good grounds here for a good faith belief, which was, after all, cited as the trial court's reason for the motionless press, and that was a record on appeal 294, 295, and 300 to 303. That was the basis, was that the agents operated with a good faith belief under Melina Isidoro and binding circuit precedent, that they were not required to have either reasonable suspicion or probable cause to conduct the search in this case. As an alternative, though, we do believe after our supplemental letter break that we're on solid ground to make a harmless error argument in this case. As to the third point that we had led into discussing before we went to the questions in this case, the third reason that this court should affirm the conviction and sentence and the denial of the motionless press is that a search warrant is not required to conduct a search. As has been pointed out previously, the government's interest is at its apex at the border to prevent entry of contraband. In fact, some courts have, including the Fourth Circuit, I believe is in Cole Sue's case that we cited in our brief, that not only interest in preventing the entry of contraband in the moment, but also contraband in the past and in the future, so to prevent the continuing course of conduct and entry of contraband. The government also has a national security interest in the border, which has to be considered, so there are factors that are to be considered that were not considered in Riley, which go to Judge Willett's point that specific case exceptions were reserved to be made in Riley, and Riley was not a border case and did not consider all the factors that come into play as to the reduced expectation of privacy of individuals at the border, which the Supreme Court has addressed and the circuit courts have a lower standard for things such as body cavity searches, x-rays of defendants, personal searches, intrusive personal searches, as well as no elevated reasonable suspicion required for container searches. Mr. Gagliardi, do you think it's kosher for the government to take anybody's cell phone? Are you arguing that neither a warrant nor reasonable suspicion is required? At this point, that is the government's position, Your Honor, is that these are digital containers at the border, and even Melina Isidoro, in Judge Costa's concurring opinion, he acknowledges that there is digital contraband. Now, there he raises the issue of child pornography as the specific digital contraband. This case does not present the kind of record that really is developed enough to come to this underlying Fourth Amendment argument and for the court to decide based on that. We're talking about a call log here, which was not admitted at trial. It's essentially six calls. We don't know the dates and times of those calls, and this record is not the appropriate record for the court to consider the broader considerations. I'm a little confused about what you're saying because Judge Bybee's opinion distinguishes between what he calls manual and search. In that case, it's okay, which did uncover a call log. That's okay without reasonable suspicion, if I remember correctly, but this was not what you call a manual search. This took 10 days, and apparently, they took it apart or something like that. This would fall under his definition of a forensic search, and the fact that it may have been a burner phone that only had nothing on it except a call log doesn't mean that it was not a forensic search, correct? That's true, Your Honor. It is a forensic search. We would say absolutely agree with that. It's just the substance could have easily been recovered in an unlocked phone. It was only a forensic search because the phone was locked and the agents were unable to gain access. As to the substance material recovered, it's material that could be easily recovered during a manual search without even the kind of reliance on an app or a cloud-based information, which in Molina-Sodoro, the search of the WhatsApp would have access to cloud and the internet and things like that, which is actually more intrusive than just looking at a call log and recovering what was, in this case, essentially a two-page report with six calls going in and out, which is why this case is not the case to delve into the deeper issues that require examination on the Fourth Amendment issue. I mean, the evidence here reasonable suspicion. Yes, Judge, I'll easily establish this reasonable suspicion because all of the evidence has reacted. So the rest of the argument is about whether a warrant is needed? Is that what we're, it just seems to me that it's a reasonable suspicion and that's the highest standard that you apply at the border and these facts clearly satisfied. Yes, Judge Olley, that's certainly the case. That is the highest standard that... So I mean, to me, the case is over. We agree, Judge Shelley. We have reasonable suspicion and, in fact, we have probable cause. The government limited its argument to acknowledging reasonable suspicion because that's the highest level to this point that any binding precedent on this court has established for even the most intrusive searches. I just want to clarify the government's position. So tell me directly, head on, what level of suspicion does the government believe is required for forensic searches like this at the border? The government's position at this point, Your Honor, is that there is no elevated level of a digital device at the border. I would point out that Canoe, the Ninth Circuit case, is currently pending a petition for a mock review. So the government has moved for that case. The briefs were all submitted in May and we're awaiting word on that case. So that continues to be the government's position as of this date. And for containers, that continues to be the binding precedent. Again, back to Molina-Sidoro, and again, the government's position is that this is not the case to take the broader underlying Fourth Amendment arguments up for consideration. But under Judge Kasso's concurring opinion in Molina-Sidoro, he cites one concern, which is digital contraband in the issue of child pornography. I would certainly suggest one other reason why this is not the case to do this further examination of the Fourth Amendment is this is still emerging technology. There are things out there like cryptocurrency, cyber security concerns related to cyber weapons across the border. There are broader concerns that are involved in this reactive border crime involving narcotics, methamphetamine in this case. Does the government have a view, this may be a left field question, but does the government have a view on what the proper role of Congress should be in balancing these competing interests and announcing some sort of border-to-border policy on searches like this at our border? Certainly, a legislative record indicating what that body feels is necessary would be very helpful in developing the kind of issues that are required really to be expanded on here, such as the security concerns related to cyber security, malicious code that come into the country, things like Bitcoin. Contraband can include cash, currency, things like that. Bitcoin is a cyber currency. Those issues really need development in the legislative body to sort of figure out where the government's position is on that. Again, this is just not the case for a broad ruling on issues that really need to be delved into more. This is really a case where we need to rotate back to the Molino-Isidoro opinion, the good faith ruling in the court, which was the basis for the denial on the motion of suppress, and look at that harmless error analysis much closer than really getting into the substance of the Fourth Amendment argument. It's just not the case for that, and so we would rely on that good faith argument, which of course was why... What is your harmless error argument? Our harmless error argument, Judge Shalley, is the fact that this evidence was not submitted in the stipulated facts. It was not contained in the stipulated facts. It did not go to the finding of guilt at all. It is only admitted in the sentencing hearing, and it would have been admissible in the sentencing hearing, regardless of whether it had been suppressed or not, because the rules of evidence don't apply, and binding precedent in this court would allow it to be admitted in the sentencing hearing. Can you clarify something for me? There's this language in the Nehera case, which was also a stipulated trial, but this came up solely in the context of sentencing, and it says, we take the opportunity to clarify the defendant who goes to trial on stipulation while reserving the right to appeal from a suppression ruling, quote, will not be deemed to have waived the suppression issue, nor will the stipulation render the issue harmless. Now, where did that come from? Yes, Judge Jones, I understand that, and the way that I read that Nehera is that that is a bar, a jurisdictional bar, not as a substantive argument that it wasn't harmless. The way I read Nehera was, there may be certain issues which bar the Fifth Circuit jurisdictionally from exercising its authority, where it's not a live controversy, it's moot, so rather than a jurisdictional harmless error issue where the circuit won't even hear it. So that's my understanding as to that, Your Honor. For these reasons, Your Honor, first, if assuming, although we do not believe it was an error to deny the motion expressed, but even assuming it was error, it's harmless error. Second, the agents involved in the forensic cell phone search had an objectively reasonable belief that they were operating in good faith on the basis of the border exception to conduct that search. And third, because the Fourth Amendment does not require a search warrant or elevated suspicion to conduct the search in this case, this court should affirm the conviction and sentence and the denial of the motion expressed in this case. Thank you, Your Honor. Thank you, sir. All right, Mr. Lynch, rebuttal. Your Honor, as to the interest that the government has at the border, again, I think we look to Riley. Riley tells us that the three things we look at are the intrusion of privacy, the government interest, and making sure that any search that's allowed is tethered to the justification for its exception. The primary justification for the border rule is the interdiction of contraband. There may be some other interests that are implicated, but those interests do not allow the sort of free-ranging search through every bit of information that might be accessed on the phone. The border exception is not an exception to search your entire life. It's an exception to prevent the entry of contraband. And I think Judge Willett, to a certain extent, Congress has already, and has for a very long time, addressed that in 19 U.S.C. 432. A, they make it very clear that the searches that are authorized for customs agents are about interdicting contraband. I think that this goes to the case-specific. A rule such as the rule in Kano is essentially a case-specific rule. Well, let me just stop you there. Kano came a year or more after the search in this case. So what you'd be asking us to do is to adopt a later defined, a later, you know, defined scope of search, and then do away with good faith? No, Your Honor, because what we know from the Supreme Court in Davis v. United States, which is 564 U.S. 229, is that the good faith rule applies to appellate precedent when officers act according to binding appellate precedent. There is no binding appellate precedent specifically authorizing a warrantless search of a cell phone. No court had authorized that in this circuit. The Supreme Court had not authorized it. And I think a reasonable view of Riley would lead any reasonably cautious government lawyer, and we know that these agents are advised by the many lawyers that Homeland Security and the tells us there's a very, very high degree of protection. But the important thing for good faith is there's not a precedent on point specifically authorizing a warrantless forensic search. And that, Davis tells us, is the test. It's not that there isn't a case saying it's wrong. It's as a case saying the agent's right. And the reason for that, of course, is that the Fourth Amendment restrains the government. It doesn't restrain the litigant or the person whose rights have been violated. The Fourth Amendment restrains the government. And so that Davis exception fits with how we expect the Fourth Amendment to work. And what about Judge Jolly's point that there was at least reasonable suspicion here? I think under a Canoe rule, there wasn't reasonable since we don't have evidence that the agents reasonably suspected digital contraband. So they didn't have a right to do a warrantless search. There was no authorization, specific authorization for them to do it on reasonable suspicion. But if the government wants to fall back, if the court decides that the Canoe rule is correct, that the usual case is implicitly warrant and that reasonable suspicion of digital contraband, there isn't reasonable suspicion of digital contraband in this record. The government did not testify that they thought there was digital contraband on that phone. They just wanted to look at his phone because they took it because that's what they do. They search when they see something at the border, but that's not permitted. My time is up. Thank you. All right. Thank you both. We appreciate your arguments and hope to see you again in New Orleans. I hope so too, Judge. Thank you very much.